A. J. C. J. and J.J. AG Lumber.       D.A.     J. J. and J. A. J. A. J. J. J. and J. J. J. S. S. S. A. A. B.  J.   A.  J. J.  A. J. A. A. J. S. A. A. J. J. S. S. A. A. J. J.   J. S.  J. J. A.      B. A. A. J. A. B. J. A. B. A. A. J. A. J. J. A. B. J. A. J. A. J. B. J. A. B. A. A. J. B. J. J. J. she J.        A. B. J. A. She J. B. J. A. B. A. J. A. G. J AR J. B. G. J. A.  J. A. B. J. G. B. A. G. G. A. B.      B.    G. J. A. A. G. B. J. B. J. A. A. G. G. J. A.             G.  B. G. J. A. B. G. A. B. G. J. A. B. A. B. B.           B. A. O. Z. D. Q. G. I. A. H. M. Q. A. H. M. O. Z. Q. I. R.    Z.   H. M. O. Z. Q. I. H. M. O. Z. Q. I. H. M. O. Z. Q. I. R. O. Z. Q. I. H.  O. Z. Q. I. H. M. O. Z. Q. I. R. O. Z. Q. I. Q. I. H.   I.        T. Q. H. H. H. Z. Q. I. L. O. Z. O. Z. Q. Ro. Z. H.    Z.  Z. Q. S. Q. H. I. L.  Z. O. Z. O. Q. H. Z. O. Z. O. Q. H. I. L. Q. S. Q.         O.  H.  L. Z. O. Q. H. I. L. Z. O. Q. Q. H. I. L. Z. H.    L. Z. O. Q. I.               O. Q. Q. B. Z. O. Q. H. L. Z. O. Q. Q. H. Q. K.      L. Z. O. Q. K. I. Q. H. L. Z. O. Q. H. L. Z. O. Q. H. L. Z. O. Q. Q.          Q. H.  O.  H. Z. O. T. K. I. Q. Q. Z. O. Q. H. L. Z. Q.        O.     Y.  Q. Z. O. I. H. We. H. A. Z. O. H. There. M. H H. Q.               M. H. Q. Z. O. H. Q. O. H. Z. O. H. Q. O. H. Z. O. H. Q. Q. O. H. Z. O. Q. What about the fact that he made absolutely no findings in the record? I mean, the statute does say that there shall be findings, so he doesn't even mention any real facts. This is not a guardianship case. It's a wardship case. That's because the statute is pretty clear. It's a wardship case, but the case went on. If you look at the past history of the case, this mother has been involved in services since 2008. That's even before the three children, as you hear, were born. So this is a problem that's been ongoing, and the case also, the intact family case with regard to these specific three children, began in 2016. Over time, the mother did nothing she was supposed to do, and with regard to any allegations against the father, if you look at the petition, at the point the petition was filed, he was listed as a putative father. This is an out-of-state father who, for all we know, didn't even know he was the father. Once he was determined to be the biological father, he stepped up and did everything he needed to do. With regard to the argument that there was some harm in having the statute complied with, I don't understand. I totally agree with you. I mean, I don't understand why the state wouldn't do it. I have no answer for you. I don't understand why the state wouldn't just let it go back, make the findings, and then... Well, we do argue in the alternative that if this Court finds that the writing requirement was not satisfied here and that the remainder of the record fails to support that best interest determination, then the remedy certainly is a remand to the Trial Court for compliance with the Juvenile Court Act. If that's what this Court chooses to do, the state has no issue with that. Actually, the state sees nothing wrong with that step. It's just that before we get there, there were allegations in the petition, the juvenile and the punitive father, but none of those allegations were proven. So to come in and equate an unproven allegation as, oh, well, the father was responsible for this also, it's just simply not in line with what occurred in this case. There has to be proof by proponents of the evidence on an adjudication where there's no finding against that parent. The finding is against the mother, and if you look at the adjudicatory order, it specifically indicates which witnesses were called. A Madeline Walker, and this is at Respondent's Exhibit at the back of the brief, A4 through A5, the adjudicatory order. It lists the witnesses called Madeline Walker, Deanna Luckett, and then the mother was called. All of those witnesses testified about the mother's involvement or lack of involvement with the children. No testimony whatsoever was presented with regard to the father in this case. What was presented about the father? I mean, in your argument in the briefs, it talks about the status of the father and employment and the home situation and having a relationship and everything. Is that in the record? Yes, Your Honor. It is in the record. And what we initially have is the order, the adjudicatory order, and then the finding that lordship is in the best interest of the child. Opening the case and then making sure services are provided to both parents. And then we have client service plans, a number of these, and each one of these. What was the source of the, of the, of a determination of the status of the father? Was that through the service plan and the people involved in the agency? Exactly, Your Honor. It's through the service plan and the agency representatives who are tasked with determining whether or not people are on track with their goals. And then they provide the written reports to the court. But the court doesn't really mention, I'm sorry. The court doesn't really mention that it's even read those. We have to presume that, right? I believe the orders actually do mention, or at least in the hearings, they mention these records were received and each party would have had an opportunity to present information at the hearings. And when it came down to looking at, okay, what are we going to do with this guardianship case? Respondent's attorney, respondent mother's attorney said, this looks to me like a race to see who's going to be able to complete their services first. The mother failed to show for her domestic violence classes. She did not have adequate housing. She was evicted from two or three places. I don't, I don't see this case as who wins. I see this case as why, why the father was given the wardship. I don't see us deciding the merits here. Do you? Maybe I'm misunderstanding. Why the father was given the wardship. I'm just saying, there's no findings. So how do we know? How do we know? So I understand the case. The agencies recommended return to the father because he was making progress. He had a job. He maintained visitation. His visits were appropriate. If you look at the visits of the mother, she relied on her own mother to try to come in and be the disciplinarian. The visits were very chaotic and unorganized when it was with the biological mother. Looking at the record as a whole, excuse me, looking at the record as a whole, and the narration by the agencies as to the situation of the father, do you, is it your position that that constitutes substantial compliance or that it does not adequately need substantial compliance and should be referred back to specific findings backed by the trial court? That's an interesting question, Your Honor. And if I understand the question adequately, I have to say I completely agree with opposing counsel that this award fails to address the best interest. The written order fails in that regard. No doubt about that. I can't come in here and argue anything different. I believe that the record in the case supports the finding of the court that the father was the appropriate person for the custody and guardianship of the case. Whether this court agrees and whether or not that meets the best interest standard I think is best left to the court. Certainly, my opinion is the right result was reached and I think that's why you cited the Tiffany M case is that if the right result is reached, then the court can look at the underlying basis for that. But it was clear from the very outset of this case the father had made substantial progress for setting up a home for the children, a four-bedroom home for all three children, stable employment. Everything was set up for the kids. His visits went really well. The only time he missed visits was when he had a change in jobs. Everything he did was for the betterment of the family and for the kids to be able to come back home. The kids, by the end of the guardianship in this case, when we closed the case, they could not have returned to their mother because she didn't have suitable living arrangements. So that's why I'm saying the record does support that the best place for the kids would have been with the father who had stable employment. And the only reason the case went on longer than that was because originally the case workers thought they needed to comply with the Interstate Combat Act and needed to do a whole study on the father's home in Missouri. Was that ever completed? The whole study never was completed. At least it's not in this record. If it happened after that, I'm not aware of that. But the court said they needed to have this. Go ahead and lie down. The court and the assistant state's attorney indicated we don't need to have that home study. DCFS has already checked out this home. It's appropriate for the children. And so this looks like the right place for these children. If this court is of the opinion that that order, the written order, fails to provide adequate notice to the mother, because that's one of the considerations, and fails to set out the permanency in a proper way, then I think the best course is, and the proper course in that case would be, a remand to the trial court to enter written findings in compliance with the Juvenile Court Act. And it sounds like that's where this court might be headed. One final note I would have is that the state had misidentified which Aaron case respondents cited, and the state filed a motion to cite additional authority. At this time, I believe the state can withdraw that. Because if that is a case listed on the respondent's brief, then certainly it's fine for the state to bring that up now. I just regret that I missed Aaron R. versus Aaron L., and didn't want it to go by without addressing that with the public. Are you formally then withdrawing your motion? I will withdraw the motion to cite additional authority. I believe that's not needed in this case. I think Madison H. indicates that strict compliance is not required, that you can't look to the remainder of the record. Whether that supports it is up to the determination of this court. But we would respectfully ask you to affirm. In the alternative, if you feel you do not have enough information to affirm or that the trial court's oral findings do not provide adequate information on best interest, then the state suggests a limited remand for that to be accomplished. If no more questions, thank you. Thank you, Counsel. Thank you. Opposing counsel has argued manifest way to the evidence and she's done quite a bit in her briefs. And the problem with manifest way to the evidence is that's not before the court today. That's before the court today, the trial court complied with Illinois statutes. Has nothing to do with manifest way to the evidence. Nowhere in the statute does it say that, well, this doesn't count unless you, if the manifest way to the evidence is behind it. Really what they're making is they're making an implied harmless error statement. But for the court to allow... Well, I think making a substantial compliance argument. I may have misspoken. Okay. But the rest of these things, it doesn't matter. I'm sorry? The rest of these things, it doesn't matter. Well, the trial court did or did not do because the evidence could show us in the long run that maybe it was better to give the children to the father. However, they never considered the best interest of the children to even determine whether it was in the best interest to terminate the DTFS guardianship. What about all these services? Opposing counsel said, well, maybe this father was listed as a putrefather. Maybe he didn't know he was the father. Here's three children. Not one, three. How do you not know you have three kids? And DTFS did testify that there was some involvement with the father. It was just very, very limited. He knew there was children. There's no question about that. When you look at the different cases, you look at Aaron R. and you look at specifically Madison H. In those cases, the court's looking to see whether or not there was compliance. And I disagree with counsel's argument. She says that medicine does not require strict compliance. It does require strict compliance. What it says is we brought in the definition of what a writing is, but you still have to comply with that particular statute. And in Madison, they said even though we brought in this particular definition, this trial court still didn't do what they were supposed to, which was make written factual findings under 2 Test 27. So the court in Madison H. and Aaron specifically did not focus on whether or not the manifest weight of the evidence okayed it. Instead, they looked and said, this is what the law says you have to do. You didn't do it. And they reversed it. The proper remedy for this is that the court should send this back to the trial court. The trial court would have to make a finding under 2-31. So it's not just doing the formal order. They would actually have to make such findings. But more importantly, they also have to do a hearing under 228. The court just can't make findings without a hearing. It requires a hearing and an order in advance. And as such, I would request that you send this back to the trial court and have them comply with both 2-31 and 2-28. Do you think there has to be two hearings? No, I didn't get one hearing. One hearing under... Would you give me the statutory numbers again? Which... He said there has to be a hearing under two different statutes. Yeah, correct. 2-31 says that you must make the findings. Okay. And then 2-28 says you must actually have a hearing to determine whether the father is fit and then enter an order on such. Okay. So you want... You're asking for the relief that there be a remand for a hearing on findings and then also to determine whether the father is fit. Correct. It would be one court proceeding. Right. Okay. I just... I always like to ask what the relief is. Okay. Thank you. Any other questions? I don't believe we do. Thank you, counsel. Thank you. We appreciate the briefs and arguments of counsel to take the case under advisement. We have actually...